# No. 22-2252

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

NYYNKPAO BANYEE,

Petitioner-Appellee,

v.

MERRICK B. GARLAND,
Attorney General of the United States, et al.,

Respondents-Appellants.

On Appeal from the United States District Court for the District of Minnesota
Case No. 0:21-cv-01817-WMW-BRT

## BRIEF FOR RESPONDENTS-APPELLANTS

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
  *Director*

WILLIAM SILVIS
  *Assistant Director*

JESSICA W. P. D'ARRIGO
  *Senior Litigation Counsel*

COURTNEY E. MORAN
SARAH TATE CHAMBERS
  *Trial Attorneys*
  *U.S. Department of Justice, Civil Division*
  *Office of Immigration Litigation,*
    *District Court Section*
  *P.O. Box 868, Ben Franklin Station*
  *Washington, DC 20044*
  *(202) 514-4587*
  *courtney.e.moran@usdoj.gov*

## SUMMARY OF THE CASE AND
## STATEMENT REGARDING ORAL ARGUMENT

This immigration habeas case involves a due-process challenge to mandatory detention of criminal noncitizens under 8 U.S.C. § 1226(c) pending the resolution of their removal proceedings. The Supreme Court has previously upheld the constitutionality of detention without a bond hearing under 8 U.S.C. § 1226(c). *See Demore v. Kim*, 538 U.S. 510 (2003). The district court nonetheless partially granted Petitioner-Appellee Nyynkpao Banyee's habeas petition and ordered the government to provide Banyee with a bond hearing at which the government must bear the burden of justifying his continued detention by clear and convincing evidence. The government appeals from that judgment.

The government believes that oral argument may assist this Court in resolving the important constitutional question presented by this case and that 20 minutes per side will provide sufficient time to present the argument.

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND STATEMENT
REGARDING ORAL ARGUMENT

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF JURISDICTION .............................................................................. 2

STATEMENT OF THE ISSUES .................................................................................... 3

STATEMENT OF THE CASE ....................................................................................... 4

      A.     Mandatory Detention of Criminal Noncitizens During Removal
           Proceedings ............................................................................................. 4

      B.     Banyee's Immigration and Criminal History ................................. 7

      C.     District Court Habeas Proceedings .................................................. 13

SUMMARY OF ARGUMENT ...................................................................................... 17

STANDARD OF REVIEW ............................................................................................ 18

ARGUMENT .................................................................................................................. 18

I.     Banyee's Detention Pending Removal Proceedings, as Required by
     Section 1226(c), was Constitutionally Permissible. ................................. 18

      A.     The government may, consistent with due process, detain a
           criminal noncitizen like Banyee throughout his removal
           proceedings without a bond hearing. ............................................. 18

      B.     The length of Banyee's detention does not signal a lack of due
           process. .................................................................................................. 21

II.  Even if a Bond Hearing Were Required, the District Court Further Erred in Requiring the Government to Bear the Burden of Proof by Clear and Convincing Evidence. ........................................................... 25

CONCLUSION ...................................................................................................... 29

CERTIFICATE OF COMPLIANCE ............................................................... 30

CERTIFICATE OF SERVICE ........................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Abel v. United States*,
362 U.S. 217 (1960) ................................................................................ 4

*Addington v. Texas*,
441 U.S. 418 (1979) .............................................................................. 26

*Ali v. Brott*,
770 F. App'x 298 (8th Cir. 2019) ................................................. 5, 19, 26

*Barton v. Barr*,
140 S. Ct. 1442 (2020) ............................................................................ 1

*Borden v. United States*,
141 S. Ct. 1817 (2021) .......................................................................... 10

*Carlson v. Landon*,
342 U.S. 524 (1952) ......................................................................... 20, 26

*Demore v. Kim*,
538 U.S. 510 (2003) ......................................................................... passim

*Dep't of Homeland Sec. v. Thuraissigiam*,
140 S. Ct. 1959 (2020) ............................................................................ 5

*Diop v. ICE/Homeland Sec.*,
656 F.3d 221 (3d Cir. 2011) .................................................................... 7

*Foucha v. Louisiana*,
504 U.S. 71 (1992) ................................................................................ 26

*Gonzalez v. Wilkinson*,
990 F.3d 654 (8th Cir. 2021) ................................................................ 12

*Hernandez-Lara v. Lyons*,
10 F.4th 19 (1st Cir. 2021) ................................................................... 27

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ...................................................................... passim

*Kansas v. Hendricks*,
521 U.S. 346 (1997) .............................................................................. 26

*Landon v. Plasencia*,
459 U.S. 21 (1982) ................................................................................ 28

*Liban M.J. v. Sec'y of Dep't of Homeland Sec.,*
    367 F. Supp. 3d 959 (D. Minn. 2019)......................................................15

*Lora v. Shanahan,*
    804 F.3d 601 (2d Cir. 2015) ....................................................................7

*Ly v. Hansen,*
    351 F.3d 263 (6th Cir. 2003) ...................................................................7

*Marks v. United States,*
    430 U.S. 188 (1977) ...............................................................................20

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ....................................................................2, 16, 27

*Matter of Adeniji,*
    22 I. & N. Dec. 1102 (BIA 1999) .........................................................27

*Matter of Guerra,*
    24 I. & N. Dec. 37 (BIA 2006) .............................................................27

*Matter of Joseph,*
    22 I. & N. Dec. 799 (BIA 1999) ............................................................6

*Miranda v. Garland,*
    34 F.4th 338 (4th Cir. 2022) ..........................................................27, 28

*Mowlana v. Lynch,*
    803 F.3d 923 (8th Cir. 2015) .................................................................12

*Muse v. Sessions,*
    409 F. Supp. 3d 707 (D. Minn. 2018)........................................1, 14, 15

*Nielsen v. Preap,*
    139 S. Ct. 954 (2019) ...............................................................................5

*Pedro O. v. Garland,*
    543 F. Supp. 3d 733 (D. Minn. 2021).....................................................15

*Pereida v. Wilkinson,*
    141 S. Ct. 754 (2021) .............................................................................12

*Reid v. Donelan,*
    819 F.3d 486 (1st Cir. 2016) ....................................................................7

*Reno v. Flores,*
    507 U.S. 292 (1993) ..........................................................................20, 26

*Rodriguez Diaz v. Garland,*
    53 F.4th 1189 (9th Cir. 2022) ................................................................27

*Rodriguez v. Robbins*,
  804 F.3d 1060 (9th Cir. 2015) ...................................................................... 7

*Sittner v. Bowersox*,
  969 F.3d 846 (8th Cir. 2020) ...................................................................... 18

*Spencer v. Haynes*,
  774 F.3d 467 (8th Cir. 2014) ...................................................................... 21

*United States v. Salerno*,
  481 U.S. 739 (1987) .................................................................................. 26

*Wong Wing v. United States*,
  163 U.S. 228 (1896) .................................................................................. 20

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) .................................................................................. 26

**Statutes**

6 U.S.C. § 251(2) ......................................................................................... 5

8 U.S.C. § 1101(a)(43) ........................................................................... 1, 9, 10

8 U.S.C. § 1225 ....................................................................................... 4, 7

8 U.S.C. § 1226(a) ................................................................................ passim

8 U.S.C. § 1226(c) ................................................................................ passim

8 U.S.C. § 1227(a) ................................................................................ passim

8 U.S.C. § 1229b(a) ............................................................................ 10, 11, 12

8 U.S.C. § 1231(a) ...................................................................................... 4

18 U.S.C. § 16 ...................................................................................... 9, 10

28 U.S.C. § 1291 ........................................................................................ 3

28 U.S.C. § 1331 ........................................................................................ 2

28 U.S.C. § 2241 ........................................................................................ 2

Fargo Municipal Code § 10-0602 ............................................................... 8

Fargo Municipal Code § 10-1202 ............................................................... 8

Montana Criminal Statute § 45-10-103 ...................................................... 8

North Dakota Century Code § 12.1-22-01 ............................................... 8, 13

## Regulations

8 C.F.R. § 236.1 .................................................................................................. 5, 6

8 C.F.R. § 1003.19 ............................................................................................. 5, 6

8 C.F.R. § 1003.39 ............................................................................................... 4

8 C.F.R. § 1236.1 ................................................................................................. 5

8 C.F.R. § 1241.1 ................................................................................................. 4

## Other Authorities

U.S. Const. amend. V .......................................................................................... 3, 4

## INTRODUCTION

Petitioner-Appellee Nyynkpao Banyee—a noncitizen[1] who has been convicted of several serious offenses, including robbery with a firearm—concedes that he was subject to mandatory detention pending completion of his removal proceedings under 8 U.S.C. § 1226(c). The Supreme Court has upheld the constitutionality of detention without a bond hearing under section 1226(c) for the "limited period of [a noncitizen's] removal proceedings," *Demore v. Kim*, 538 U.S. 510, 531 (2003), and Banyee's as-applied challenge should have failed because he did not identify any individual circumstances that warranted a different outcome.

Rather than apply *Demore*, however, the district court improperly relied on a flawed framework set forth by *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018), which resulted in the length of Banyee's detention—just over 12 months—being the dispositive factor in granting habeas relief. But Banyee's detention continued to serve its immigration purposes of preventing flight and recidivism pending a decision on his removal. And Banyee's removal proceedings moved apace while the Department of Homeland Security (DHS), immigration judge, and Board of Immigration Appeals (Board) carefully analyzed the immigration significance of his criminal history. In fact, on remand from the Board, the immigration judge ordered Banyee's removal less than

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien" to refer to individuals who are neither citizens nor nationals of the United States. *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

a year after removal proceedings had begun, and the district court specifically ruled that the government had not engaged in any dilatory tactics during Banyee's proceedings. Given these circumstances, the length of Banyee's detention does not signal a lack of due process.

Furthermore, no binding authority from the Supreme Court or this Court supports the district court's order that the government must bear the burden by clear and convincing evidence to justify the continued detention of a criminal noncitizen subject to mandatory detention under section 1226(c). And even if the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), applied in this context, the standard immigration bond-hearing procedures are sufficient to satisfy due process.

Accordingly, this Court should reverse the district court's judgment.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this habeas action pursuant to 28 U.S.C. § 2241, as well as under 28 U.S.C. § 1331, because Banyee's claims arose under the Constitution and laws of the United States. On December 2, 2021, United States Magistrate Judge Becky R. Thorson issued a report and recommendation (R&R) recommending that the district court grant in part Banyee's habeas petition. Addendum (A)4–15. On December 16, 2021, the government timely filed objections to the R&R. Joint Appendix (App.) 183–96, R. Doc. 12, at 1–13.

On April 14, 2022, the district court (United States District Judge Wilhelmina M. Wright) adopted the R&R and granted in part Banyee's habeas petition. A16–28. On April 15, 2022, the district court entered final judgment. A29–30.

The government timely filed a notice of appeal on June 10, 2022. App. 242–43, R. Doc. 18, at 1–2. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in ruling that Banyee's detention in accordance with 8 U.S.C. § 1226(c), which requires detention of certain criminal noncitizens during the course of their removal proceedings, violated the Due Process Clause of the Fifth Amendment.

The most apposite cases and constitutional and statutory provisions are:

- *Demore v. Kim*, 538 U.S. 510 (2003)

- Due Process Clause of the Fifth Amendment, U.S. Const. amend. V

- 8 U.S.C. § 1226(c)

2. Whether the district court erred in ruling that, if Banyee was entitled to a bond hearing despite being subject to mandatory detention under 8 U.S.C. § 1226(c), he was also entitled to release unless the government demonstrated by clear and convincing evidence that he was a flight risk or a danger to the community.

The most apposite cases and constitutional and statutory provisions are:

- *Demore v. Kim*, 538 U.S. 510 (2003)

- Due Process Clause of the Fifth Amendment, U.S. Const. amend. V

- 8 U.S.C. § 1226(c), (a)

### STATEMENT OF THE CASE

**A.  Mandatory Detention of Criminal Noncitizens During Removal Proceedings**

For more than a century, the immigration laws have authorized immigration officials to charge noncitizens as removable from the country, arrest noncitizens subject to removal, and detain noncitizens for removal proceedings. *See Abel v. United States*, 362 U.S. 217, 232–37 (1960). The Immigration and Nationality Act contains a multi-layered statutory scheme for the civil detention of noncitizens, covering each stage of the removal process. *See generally* 8 U.S.C. §§ 1225, 1226, 1231. Section 1226 "generally governs the process of arresting and detaining . . . aliens pending their removal." *Jennings v. Rodriguez,* 138 S. Ct. 830, 837 (2018). Once a noncitizen has an administratively final removal order, detention authority shifts from section 1226 to section 1231.[2] *See id.* at 843; 8 U.S.C. § 1231(a).

---

[2] An immigration judge's order of removal becomes final when, *inter alia*, the time for administrative appeal to the Board expires without an appeal or, if there is an appeal, the Board dismisses the administrative appeal. *See* 8 C.F.R. § 1241.1(a). Similarly, "[e]xcept when certified to the Board," an immigration judge's order granting relief to a noncitizen becomes final only "upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39.

Section 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see Ali v. Brott*, 770 F. App'x 298, 300 (8th Cir. 2019). A noncitizen whom DHS—including, as relevant here, its component U.S. Immigration and Customs Enforcement (ICE)—initially detains as a matter of discretion pursuant to section 1226(a) may be released on bond or other conditions, either by a DHS officer or by an immigration judge after a bond hearing. *See* 8 U.S.C. § 1226(a)(2); 8 C.F.R. §§ 236.1, 1003.19, 1236.1(d)(1).

In contrast to section 1226(a), section 1226(c) provides that "[t]he Attorney General shall take into custody any alien who" has committed any one of a category of serious crimes, 8 U.S.C. § 1226(c)(1), and "may release" that noncitizen "only" under a narrow witness-protection exception that does not apply here, *id.* § 1226(c)(2).[3] *See Jennings*, 138 S. Ct. at 846; *Demore*, 538 U.S. at 517–18. Section 1226(c) is limited to a narrow class of noncitizens "who have committed certain dangerous crimes and those who have connections to terrorism." *Nielsen v. Preap*, 139 S. Ct. 954, 959 (2019). For example, categories of noncitizens who must be detained pending a decision on removal include those who have participated in

---

[3] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), transferred most immigration enforcement functions previously vested in the Attorney General to the Secretary of Homeland Security. *See* 6 U.S.C. § 251(2); *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1965 n.3 (2020).

terrorist activities, 8 U.S.C. §§ 1226(c)(1)(D), 1182(a)(3)(B), 1227(a)(4)(B), have been convicted of an aggravated felony, *id.* §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii), have been convicted of a controlled-substance offense, *id.* §§ 1226(c)(1)(B), 1227(a)(2)(B), or have been convicted of two or more crimes involving moral turpitude, *id.* §§ 1226(c)(1)(B), 1227(a)(2)(A)(ii).

Congress enacted section 1226(c) in response to evidence that immigration authorities were unable to remove many criminal noncitizens because they failed to appear for removal hearings and that criminal noncitizens released on bond often committed additional crimes before they could be removed. *See Demore*, 538 U.S. at 518–20; *Jennings*, 138 S. Ct. at 836 (detention during removal proceedings prevents a noncitizen from absconding or reoffending pending a decision on removal). In short, section 1226(c) makes clear Congress's intent that "aliens detained under [section 1226(c)] are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Jennings*, 138 S. Ct. at 846. The "termination point" of detention under section 1226(c) is thus usually "the conclusion of removal proceedings," and no earlier. *Id.* (quotation marks omitted).

Noncitizens detained under section 1226(c) may request a "*Joseph* hearing" to challenge whether their conviction is one that subjects them to mandatory detention. *See Matter of Joseph*, 22 I. & N. Dec. 799, 800 (BIA 1999); 8 C.F.R. § 1003.19(h)(2)(ii); *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). And noncitizens may appeal an adverse *Joseph* decision to the Board. 8 C.F.R. § 236.1(d)(3). Thus, where a criminal

noncitizen remains detained under section 1226(c), he has either forgone a *Joseph* hearing, or the immigration judge (or the Board) has found "at least some merit to the [government's] charge." *Demore*, 538 U.S. at 514, 531–32 (Kennedy, J., concurring).

Before the Supreme Court's 2018 opinion in *Jennings*, several courts of appeals—although not this Court—had relied on the canon of constitutional avoidance to impose "implicit" limitations on the length of mandatory detention under section 1226(c). *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003). But in *Jennings*, the Supreme Court explicitly rejected the Ninth Circuit's use of the constitutional-avoidance canon to hold that 8 U.S.C. §§ 1225, 1226(a), and 1226(c) require bond hearings after six months of immigration detention. *See Jennings*, 138 S. Ct. at 836. Accordingly, *Jennings* abrogated the other courts of appeals' decisions that had relied on the same faulty constitutional-avoidance analysis to impose temporal limitations on detention under section 1226(c). Nonetheless, some district courts within this circuit—including the District of Minnesota below— continue to apply a misguided framework rooted in those decisions.

**B.      Banyee's Immigration and Criminal History**

Banyee is a native and citizen of the Ivory Coast who entered the United States as a refugee in 2004 and adjusted his status to that of a lawful permanent resident in 2005. App. 10, R. Doc. 1, at 7; App. 35–41; R. Doc. 1-4, at 1–7. As Banyee concedes,

over the last few years, he has amassed a "somewhat lengthy criminal record." App. 10, R. Doc. 1, at 7. In 2016, Banyee was convicted in North Dakota of theft, in violation of Fargo Municipal Code § 10-0602, App. 10, R. Doc. 1, at 7; App. 37, R. Doc. 1-4, at 3; App. 103–05, R. Doc. 8-1, at 1–3, and of making a false report to law enforcement, App. 10, R. Doc. 1, at 7; App. 38, R. Doc. 1-4, at 4; App. 158, R. Doc. 9, at 2. The following year, Banyee was convicted in Montana of criminal possession of drug paraphernalia, in violation of Montana Criminal Statute § 45-10-103, App. 10, R. Doc. 1, at 7; App. 37–38, R. Doc. 1-4, at 3–4; App. 158, R. Doc. 9, at 2, and convicted in North Dakota of unlawful possession of marijuana, in violation of Fargo Municipal Code § 10-1202, App. 10, R. Doc. 1, at 7; App. 37–39, R. Doc. 1-4, at 3–5.

As a capstone to his string of convictions, in June 2018, Banyee was convicted after a bench trial in North Dakota of robbery with a firearm, dangerous weapon, or destructive device, in violation of North Dakota Century Code § 12.1-22-01(1), a class B felony. App. 11, R. Doc. 1, at 8; App. 37–41, R. Doc. 1-4, at 3–7; App. 116–25, R. Doc. 8-2, at 1–10. Banyee was sentenced to five years' confinement, with credit for time served.[4] App. 11, R. Doc. 1, at 8; App. 116, R. Doc. 8-2, at 1; App. 121, R. Doc. 8-2, at 6.

---

[4] Banyee sought postconviction relief, which was denied, and filed a direct appeal. App. 126–28, R. Doc. 8-2, at 11–13. In July 2020, the North Dakota Supreme Court affirmed the criminal judgment and the judgment denying Banyee's application

*Continued on next page.*

Given that Banyee is a noncitizen who had been convicted of several serious crimes, ICE moved quickly to assess his potential removability. The same month that Banyee was convicted of robbery, ICE conducted background checks and interviewed him at the Cass County Jail while he awaited his transfer to the North Dakota State Penitentiary. App. 37–38, R. Doc. 1-4, at 3–4; App. 159, R. Doc. 9, at 3. ICE then determined that Banyee should be charged with removability, issued a warrant for his arrest, and lodged an immigration detainer with both the Cass County Jail and the North Dakota State Penitentiary. App. 37–38, R. Doc. 1-4, at 3–4; App. 159, R. Doc. 9, at 3.

On March 31, 2021, upon his release from the state prison, ICE arrested Banyee and served him with a Notice to Appear, charging him with removability as a noncitizen who, after his admission, had been convicted of (1) a controlled-substance offense, 8 U.S.C. § 1227(a)(2)(B)(i); (2) two or more crimes involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(ii); and (3) an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), as defined in 8 U.S.C. § 1101(a)(43)(F) (crime of violence as defined in 18 U.S.C. § 16). App. 30–33, R. Doc. 1-2, at 1–4; App. 159, R. Doc. 9, at 3. Based on these removability charges, ICE determined that Banyee was subject to mandatory

for postconviction relief. App. 118, R. Doc. 8-2, at 3; App. 126–28, R. Doc. 8-2, at 11–13.

9

detention pursuant to 8 U.S.C. § 1226(c)(1)(B). App. 34, R. Doc. 1-3, at 1; App. 159, R. Doc. 9, at 3.

Banyee first appeared for a removal hearing on April 15, 2021. App. 30, R. Doc. 1-2, at 1. On May 20, 2021, an immigration judge sustained two of the charges of removability—under 8 U.S.C. § 1227(a)(2)(A)(ii) (two or more crimes involving moral turpitude) and 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(F) (aggravated felony crime of violence)—and scheduled an individual merits hearing for June 22, 2021. App. 11, R. Doc. 1, at 8; App. 160, R. Doc. 9, at 4.

On June 10, 2021, the Supreme Court issued its opinion in *Borden v. United States*, 141 S. Ct. 1817 (2021), which involved the proper interpretation of "crime of violence" set forth in 18 U.S.C. § 16. Accordingly, on June 22, 2021, rather than proceed with Banyee's hearing, the immigration judge noted that, pursuant to *Borden*, Banyee's robbery conviction might not qualify as an aggravated felony crime of violence. App. 11–12, R. Doc. 1, at 8–9; App. 160, R. Doc. 9, at 4. The immigration judge thus rescheduled the proceedings to allow Banyee time to apply for cancellation of removal for certain permanent residents pursuant to 8 U.S.C. § 1229b(a), App. 12, R. Doc. 1, at 9; App. 160, R. Doc. 9, at 4, which cannot be granted where the noncitizen has been convicted of an aggravated felony, *see* 8 U.S.C. § 1229b(a)(3).

The same day, ICE further charged Banyee with removability as a noncitizen who, after his admission, had been convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), as defined in 8 U.S.C. § 1101(a)(43)(U), (G) (attempt to commit

10

theft or burglary for which the term of imprisonment is at least one year). App. 155–56, R. Doc. 8-4, at 1–2. The following day, ICE submitted a brief in support of the aggravated-felony-attempted-theft charge of removability and withdrew the aggravated-felony-crime-of-violence charge. App. 160, R. Doc. 9, at 4. Then, through his federal habeas counsel—who was "assisting [Banyee] at that time" but apparently did not enter an appearance—Banyee filed arguments disputing the new aggravated-felony charge of removability. App. 12, R. Doc. 1, at 9.

On July 15, 2021, the immigration judge orally rendered a decision sustaining the moral-turpitude charge of removability and denying Banyee's applications for asylum, withholding of removal, and protection under the Convention Against Torture. App. 42–44, R. Doc. 1-5, at 1–3; App. 208–09, R. Doc. 14-1, at 1–2. But the immigration judge concluded that Banyee's statute of conviction for robbery was overbroad on its face from the generic definition of theft, and thus ICE had not met its burden to establish the new aggravated-felony-attempted-theft charge of removability. App. 160–61, R. Doc. 9, at 4–5; App. 209, R. Doc. 14-1, at 2; App. 214–15, R. Doc. 15-1, at 1–2. The immigration judge then granted Banyee's application for cancellation of removal under 8 U.S.C. § 1229b(a). App. 42–44, R. Doc. 1-5, at 1–3; App. 160–61, R. Doc. 9, at 4–5; App. 208–09, R. Doc. 14-1, at 1–2; App. 214–15, R. Doc. 15-1, at 1–2.

Less than a week later, ICE appealed to the Board, arguing that Banyee's robbery conviction is an aggravated-felony-attempted-theft offense that statutorily

bars his eligibility for cancellation of removal, *see* 8 U.S.C. § 1229b(a)(3), and that in any event he does not merit a favorable exercise of discretion. App. 57–59, R. Doc. 1-6, at 1–3; App. 161, R. Doc. 9, at 5; App. 208–09, R. Doc. 14-1, at 1–2; App. 215, R. Doc. 15-1, at 2.

Just a few months later, on January 31, 2022, the Board issued its decision on the complex aggravated-felony-attempted-theft issue. App. 208–11, R. Doc. 14-1, at 1–4. The Board explained that Banyee, as the noncitizen applying for relief from removal, had the burden to establish that he had not been convicted of a disqualifying offense. App. 209, R. Doc. 14-1, at 2 (citing *Pereida v. Wilkinson*, 141 S. Ct. 754 (2021)). The Board then held that Banyee's statute of conviction was *not* overbroad on its face from the generic definition of theft, so Banyee needed to demonstrate a "realistic probability" that the government would apply his statute of conviction to conduct beyond the generic definition. App. 209–11, R. Doc. 14-1, at 2–4 (citing *Mowlana v. Lynch*, 803 F.3d 923, 925 (8th Cir. 2015); *Gonzalez v. Wilkinson*, 990 F.3d 654, 660 (8th Cir. 2021)). Accordingly, the Board remanded the case for the immigration judge to reassess the aggravated-felony-attempted-theft charge by applying the "realistic probability" test in the first instance. App. 209–11, R. Doc. 14-1, at 2–4; App. 215, R. Doc. 15-1, at 2.

Within two months, on March 25, 2022, the immigration judge ruled that Banyee's robbery conviction does in fact qualify as an aggravated-felony-attempted-theft offense. App. 214–19, R. Doc. 15-1, at 1–6. Specifically, the immigration judge

held that Banyee "ha[d] not carried his burden to demonstrate a realistic probability that the State of North Dakota would apply N.D.C.C. § 12.1-22-01 to conduct that falls outside the federal generic definition of attempted theft." App. 218, R. Doc. 15-1, at 5. Accordingly, the immigration judge denied Banyee's application for cancellation of removal and ordered his removal.[5] App. 218, R. Doc. 15-1, at 5.

### C. District Court Habeas Proceedings

On August 9, 2021, while ICE's appeal to the Board was pending—and thus Banyee's removal proceedings were ongoing—Banyee filed a habeas petition challenging his detention. App. 4–28, R. Doc. 1, at 1–25. He conceded that he was subject to mandatory detention under section 1226(c) based on his removability for being convicted of at least two crimes involving moral turpitude. App. 14, R. Doc. 1, at 11; *see* 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(ii). Nonetheless, Banyee claimed that his "prolonged" detention without a bond hearing—at that time just over four months—violated the Fifth Amendment's Due Process Clause. App. 27, R. Doc. 1, at 24. He therefore sought a bond hearing before an immigration judge at which the government would bear the burden of proof by clear and convincing evidence that he is a danger to the community or a flight risk. App. 27–28, R. Doc. 1, at 24–25.

On December 2, 2021, a magistrate judge issued an R&R recommending that the district court partially grant the petition and order the bond hearing that Banyee

---

[5] Banyee appealed that order to the Board, which has not yet set a briefing schedule, and thus his appeal remains pending as of this filing.

requested.[6] A4–14. The government timely objected to the R&R's conclusion that due process requires the government to provide Banyee with a bond hearing and to the R&R's recommendation as to the burden of proof that should apply at any bond hearing. App. 183–95, R. Doc. 12, at 1–13.

On April 14, 2022—by which time Banyee had been detained for just over a year and the immigration judge had recently ordered his removal upon remand from the Board—the district court adopted the R&R and partially granted the habeas petition. A16–28. As the magistrate judge had done—as do most judges within the District of Minnesota—the district court analyzed Banyee's due-process challenge under the framework laid out in *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018). A19–23. The *Muse* court set out six "factors" it believed should be weighed to assess whether section 1226(c) detention violates due process: (1) the total length of detention, (2) the likely duration of future detention, (3) the conditions of detention, (4) any delays in removal proceedings caused by the noncitizen, (5) any delays in removal proceedings caused by the government, and (6) the likelihood that removal proceedings will result in a final order of removal. *Muse*, 409 F. Supp. 3d at 715.[7]

---

[6] The recommendation to "partially" grant the petition refers only to timing—Banyee had sought a bond hearing within 14 days, and the R&R recommended that Banyee receive a bond hearing within 30 days of the district court's order. A12 n.6.

[7] In fashioning its multi-factor framework, the district court in *Muse* principally relied on the First Circuit's decision in *Reid*, despite acknowledging that *Reid* had been based on a flawed constitutional-avoidance analysis that the Supreme Court had expressly rejected in *Jennings*. *Muse*, 409 F. Supp. 3d at 715 & n.3.

The district court ruled that three of the so-called "*Muse* factors"—all of which hinged on the length of detention—weighed in Banyee's favor. First, the court deemed Banyee's 12-month period of detention to date "well beyond the 'brief' several-month period of detention contemplated by *Demore*," and noted that other "[c]ourts in this District routinely have concluded that similar periods of detention are not sufficiently brief." A21 (citing *Muse*, 409 F. Supp. 3d at 716 (14 months); *Pedro O. v. Garland*, 543 F. Supp. 3d 733, 738 (D. Minn. 2021) (13 months); and *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963–64 (D. Minn. 2019) (12 months)). Second, despite admitting that it "cannot predict how long [Banyee's] removal proceedings will continue," the court nonetheless supposed there was "no imminent end in sight" and that Banyee "may be detained for several more months as his case continues to proceed through both the administrative and judicial process." A21–22. Third, regarding Banyee's "conditions of confinement" at the Kandiyohi County Jail (a criminal correctional facility), the court asserted that "the weight of this factor increases with the length of detention" and thus "weighs strongly in [Banyee's] favor." A22.

The court then decided that the remaining three factors were "neutral." A22–23. Regarding any delays caused by Banyee or the government, the court ruled that "neither party has engaged in dilatory tactics" and that "each party has advanced substantive arguments addressing the positions taken throughout this administrative and judicial process." A23. Finally, the court noted that it could not weigh the merits

of the government's arguments on removability or Banyee's arguments regarding his eligibility for relief and thus could not predict whether the removal proceedings would lead to a final removal order. A23. Accordingly, the court held that overall the *Muse* factors weighed in favor of granting Banyee habeas relief in the form of a bond hearing. A23.

Then, after cursorily applying the *Mathews* procedural-due-process balancing test, the court held that, at the bond hearing, the government must bear the burden of proving by clear and convincing evidence that Banyee is a flight risk or danger to the community. A24–27. Although the court did not support its conclusion with any precedent from the Supreme Court or this Court involving pre-removal-order immigration detention, the court rejected what it deemed as the government's "invitation to infer a Supreme Court holding as to an issue"—burden of proof in immigration bond hearings—"that the Supreme Court has not expressly addressed." A25.

The district court entered final judgment on April 15, 2022, A29–30, and this appeal followed, App. 242–43, R. Doc. 18, at 1–2.[8]

---

[8] In accordance with the district court's order, Banyee received a bond hearing on April 21, 2022, and the immigration judge ordered that Banyee be released on a $7,500 bond. A few days later, Banyee posted the bond and was released from ICE custody. ICE appealed the bond order to the Board; as of this filing, that appeal is pending.

# SUMMARY OF ARGUMENT

This Court should reverse the district court's judgment. Detention of a criminal noncitizen such as Banyee for the duration of his removal proceedings is mandated by 8 U.S.C. § 1226(c), and the Supreme Court has upheld that statute as consistent with due process. The *Muse* framework the district court applied contradicts the Supreme Court's holding in *Demore* by placing undue weight on the length of detention even where removal proceedings are ongoing. Detention during removal proceedings serves the valid purposes of ensuring a noncitizen's appearance for proceedings and protecting the community from danger, and those purposes do not abate simply because of the passage of time. Here, the district court specifically held that the length of removal proceedings and associated detention were not a result of any dilatory tactics by the government. Accordingly, the district court erred in principally relying on the length of Banyee's detention to measure its constitutionality.

Moreover, even if Banyee were entitled to receive a bond hearing, the district court further erred by requiring the government to bear the burden of proof by clear and convincing evidence at such a bond hearing. That ruling conflicts with the statutory framework where bond hearings are expressly permitted and with Supreme Court precedent. The appropriate remedy would be a bond hearing applying the procedures applicable to noncitizens detained under section 1226(a), and those procedures are sufficient to comply with due process.

For these reasons, the district court's judgment should be reversed.

## STANDARD OF REVIEW

On appeal of a district court's decision on a habeas petition, this Court reviews findings of fact for clear error and conclusions of law *de novo*. *See Sittner v. Bowersox*, 969 F.3d 846, 849 (8th Cir. 2020).

## ARGUMENT

**I.     Banyee's Detention Pending Removal Proceedings, as Required by Section 1226(c), was Constitutionally Permissible.**

**A.     The government may, consistent with due process, detain a criminal noncitizen like Banyee throughout his removal proceedings without a bond hearing.**

The district court erred in holding that Banyee's detention pursuant to 8 U.S.C. § 1226(c) was constitutionally impermissible. Importantly, as Banyee concedes, App. 14, R. Doc. 1, at 11, his criminal convictions bring him within the class of noncitizens that Congress categorically determined must be detained throughout their removal proceedings.[9] *See* 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(ii). Noncitizens subject to section 1226(c) detention pending completion of their removal proceedings "are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Jennings*, 138 S. Ct. at 846. Thus, although section 1226(c)

---

[9] Banyee has argued in his removal proceedings that his robbery conviction does not qualify as an aggravated felony, but he concedes that he has multiple convictions that qualify as crimes involving moral turpitude. App. 14, R. Doc. 1, at 11. Accordingly, aside from whether his robbery conviction is an aggravated felony, his removability based on his convictions for crimes involving moral turpitude provides an independent and indisputable basis for his mandatory detention under section 1226(c).

permits detention only for a finite period of time (i.e., during removal proceedings), it does not include an implicit time limit on how long that period may last. *See id.* ("the Government's detention authority under § 1226(c)" ends at "the conclusion of removal proceedings," and not "some arbitrary time limit devised by courts"); *Ali*, 770 F. App'x at 301 (observing that section 1226(c) "requires mandatory detention until a decision regarding removal is reached").

In deciding that certain categories of noncitizens like Banyee must be detained during their removal proceedings, Congress was "justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers." *Demore*, 538 U.S. at 513. Accordingly, the Supreme Court upheld the facial constitutionality of detaining criminal noncitizens "for the brief period necessary for their removal proceedings," *id.*, emphasizing that such detention "*pending their removal proceedings . . .* necessarily serves the purpose of preventing [such] aliens from fleeing prior to or during their removal proceedings," *id.* at 527–28. The Supreme Court premised its due-process analysis on the fact that section 1226(c) detention has a "definite termination point"—as soon as removal proceedings are completed—and serves the government's interest in "increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528–29. The Court thus held that, particularly for a criminal noncitizen who has conceded

removability, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 530.[10]

The Supreme Court has not yet decided whether due process might prohibit the continued application of section 1226(c) in individual extraordinary circumstances. That said, Justice Kennedy's concurrence in *Demore* expressed the view that a noncitizen detained under section 1226(c) "could be entitled" to a bond hearing, as a matter of due process, "if the continued detention became unreasonable or unjustified."[11] *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). In Justice Kennedy's view, because "the Due Process Clause prohibits arbitrary deprivations of liberty," the constitutionality of detention depends largely on its justifications. *Id.* For example, Justice Kennedy explained, "[w]ere there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary to then inquire whether the detention is not to facilitate deportation, or to

---

[10] In fact, in every case it has heard involving detention during removal proceedings, the Supreme Court has concluded that such detention is constitutional. *See Demore*, 538 U.S. at 513; *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("Congress has the authority to detain aliens suspected of entering the country illegally pending their deportation hearings."); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid.").

[11] Justice Kennedy joined the majority opinion in full, *Demore*, 538 U.S. at 533 (Kennedy, J., concurring), and his concurrence therefore cannot be read as limiting or qualifying the Court's rationale, *cf. Marks v. United States*, 430 U.S. 188, 193 (1977) (articulating rule that applies when no rationale obtains "the assent of five Justices").

protect against risk of flight or dangerousness, but to incarcerate for other reasons."
*Id.* at 532–33.

In other words, section 1226(c) detention is facially constitutional, but it might cease to be constitutional in extraordinary circumstances, such as where the government has unreasonably delayed removal proceedings. As discussed below, however, neither Banyee nor the district court identified any such circumstances here.

**B.  The length of Banyee's detention does not signal a lack of due process.**

The district court relied on a flawed framework to improperly elevate the length of Banyee's detention as the nearly dispositive "factor" in holding that his section 1226(c) detention was unconstitutional. A21–22. The court placed undue weight on (1) Banyee's 12-month detention period at the time of resolving the habeas petition (8 months after Banyee had filed it), (2) the theoretical length of any future detention, and (3) the court's misguided belief that the "conditions of confinement" factor weighed more heavily in Banyee's favor as the length of his detention increased.[12] A21–22. But Banyee's removal proceedings advanced at a typical pace, and the length of his detention incident to those proceedings does not signal a lack of

---

[12] Because the court deemed the other "*Muse* factors" "neutral," its grant of habeas relief depended entirely on the length of Banyee's present and anticipated detention. To the extent the court found the "conditions of confinement" factor relevant aside from the length of detention, any such consideration is unwarranted. *See Spencer v. Haynes*, 774 F.3d 467, 469–70 (8th Cir. 2014) (holding that a conditions-of-confinement claim is not cognizable in a habeas action).

due process. Neither Banyee nor the district court identified any extraordinary circumstances to warrant a grant of habeas relief.

To the contrary, the length of Banyee's detention reflected the reasonable pace of his removal proceedings. Less than two months after ICE initiated Banyee's removal proceedings, an immigration judge sustained two charges of removability, both of which brought him within the ambit of section 1226(c) detention.[13] App. 11, R. Doc. 1, at 8; App. 160, R. Doc. 9, at 4. And just a few weeks later, based on intervening Supreme Court precedent, the immigration judge prudently reassessed her prior aggravated-felony ruling. App. 11–12, R. Doc. 1, at 8–9; App. 160, R. Doc. 9, at 4. Also recognizing the significance of the Supreme Court's recent decision in *Borden*, ICE quickly withdrew that charge of removability and added an aggravated-felony-attempted-theft charge. App. 155–56, R. Doc. 8-4, at 1–2; App. 160, R. Doc. 9, at 4. Then ICE and Banyee—through counsel—submitted briefing on his removability, App. 12, R. Doc. 1, at 9; App. 160, R. Doc. 9, at 4, and the immigration judge issued a decision granting Banyee cancellation of removal, App. 42–44, R. Doc. 1-5, at 1–3. Wasting no time, ICE appealed that decision to the Board less than a week later. App. 57–59, R. Doc. 1-6, at 1–3. And within a few months, the Board vindicated ICE's appeal; because the immigration judge had not adequately assessed

---

[13] As noted above, Banyee has never contested—and in fact concedes—one of those charges, i.e., that he has been convicted of multiple crimes involving moral turpitude. App. 11, R. Doc. 1, at 8.

the significance of Banyee's robbery conviction, the Board remanded his case. App. 208–11, R. Doc. 14-1, at 1–4. Two months later—and less than a year after removal proceedings had begun—after properly applying the categorical approach and the realistic probability test when analyzing Banyee's robbery conviction, the immigration judge concluded that his conviction is an aggravated-felony-attempted-theft offense, rendering him ineligible for cancellation of removal, and thus ordered his removal. App. 214–19, R. Doc. 15-1, at 1–6.

This timeline reflects a typical progression and careful assessment of Banyee's contested removability and eligibility for relief, and thus it is entirely consistent with due process. In *Demore*, the Supreme Court noted that the removal proceedings in that case had taken longer than average. *Demore*, 538 U.S. at 530-31. But rather than conclude that the noncitizen's detention violated due process, the Court made clear that due process is not violated simply because the noncitizen's litigation choices— such as requesting continuances, filing applications for relief, or filing an appeal, as Banyee did here—require that additional time be spent in removal proceedings. *See id.* at 531. The Court explained that although a noncitizen may need to make "difficult judgments" that could extend his removal proceedings and thus his detention, "there is no constitutional prohibition against requiring parties to make such choices." *Id.* at 530 n.14.

Similarly, the government's actions throughout Banyee's removal proceedings do not justify any inference that his detention had become unreasonable or

unjustified. *See Demore*, 538 U.S. at 532 (Kennedy, J. concurring). As in *Demore*, the length of Banyee's detention reflected the progress of his ongoing removal proceedings, and the government's interest in detaining him continued while his removal proceedings ran their course. Banyee did not allege that the government lacked justification to detain him or caused any unreasonable delay, instead conceding that the government "ha[d] exercised its right to appeal." App. 20, R. Doc. 1, at 17. And the district court agreed, specifically ruling that the government did not "engage[] in dilatory tactics" and had "advanced substantive arguments" supporting its position. App. 23, R. Doc. 1, at 20. In finding that the government had not unreasonably delayed the proceedings, then, the district court necessarily concluded that those proceedings had progressed in their typical course—a course during which Congress has mandated detention. Accordingly, even under the analysis set forth by Justice Kennedy in his concurrence, the timeline of Banyee's proceedings did not warrant a grant of habeas relief because there was no reason to conclude that his detention was for any illegitimate purpose. Rather, Banyee's detention was justified as incident to the completion of his underlying removal proceedings.

In short, the circumstances of this case do not demonstrate that Banyee's continued detention under section 1226(c) violated due process. As in *Demore*, Banyee's detention under section 1226(c) during removal proceedings continued to "serve its purported immigration purpose," *Demore*, 538 U.S. at 527—that is, ensuring his appearance and protecting the community from someone who had already

committed crimes that Congress has determined warrant mandatory detention. Moreover, the government's interest in executing a final removal order, if entered, has remained significant throughout Banyee's removal proceedings. *See id.* at 519-20.

Accordingly, Banyee's section 1226(c) detention was constitutionally permissible and did not stop being so simply because of its length. The district court erred in holding that Banyee's detention violated due process.

## II. Even if a Bond Hearing Were Required, the District Court Further Erred in Requiring the Government to Bear the Burden of Proof by Clear and Convincing Evidence.

The district court further erred in placing the burden on the government to justify Banyee's continued detention by clear and convincing evidence. A24–27. First, placing the burden of proof on the government runs contrary to the burden that expressly applies in the limited situation in which section 1226(c) permits release on bond. A noncitizen detained under section 1226(c) may be released only if it is "necessary" for witness protection and "*the alien satisfies* the Attorney General" that he "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2) (emphasis added).

Moreover, the Constitution does not require the government to bear the burden of proving that a noncitizen is a flight risk or a danger, much less under a heightened standard. As explained above, the Supreme Court has consistently affirmed the constitutionality of detention pending removal proceedings, and it has never required the government to bear the burden of justifying that detention, let

alone by clear and convincing evidence. *See, e.g.*, *Demore*, 538 U.S. at 531 (affirming categorical detention of certain criminal noncitizens); *Flores*, 507 U.S. at 306 (affirming detention of juvenile noncitizens on suspicion of being deportable); *Carlson*, 342 U.S. at 538 (affirming categorical detention of Communist Party associates); *cf. Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (permitting release only after the noncitizen bears the initial burden to show "that there is no significant likelihood of [his] removal in the reasonably foreseeable future"). In the immigration context, the government's plenary authority is at its zenith, *see Flores*, 507 U.S. at 305, and immigration detention pending completion of removal proceedings has a definite termination point, *see Demore*, 538 U.S. at 529; *Jennings*, 138 S. Ct. at 846. The Supreme Court has never held immigration detention during removal proceedings to the same standard it has applied to the indefinite (and potentially permanent) civil detention of individuals (generally U.S. citizens) in *Addington v. Texas*, 441 U.S. 418 (1979), *Foucha v. Louisiana*, 504 U.S. 71 (1992), or *Kansas v. Hendricks*, 521 U.S. 346 (1997), or to the pretrial criminal detention of individuals in *United States v. Salerno*, 481 U.S. 739 (1987).

If this Court were to hold that Banyee's section 1226(c) detention violated due process, the appropriate remedy would be a bond hearing applying the procedures applicable to noncitizens detained under section 1226(a). *See Ali*, 770 F. App'x at 301 ("The Supreme Court has never indicated the bond hearing process set forth in the statute and accompanying regulations is constitutionally deficient."); *cf. Jennings*, 138 S. Ct. at 876 (Breyer, J., dissenting) (arguing that bond hearings the dissent

believed were constitutionally required should be conducted "in accordance with customary rules of procedure and burdens of proof rather than the special rules that the Ninth Circuit imposed"). And the customary bond-hearing procedures allow the noncitizen to establish his eligibility for release by demonstrating by a preponderance of the evidence that he is not a danger to the community or a flight risk. *See Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1114 (BIA 1999).

Even if the *Mathews* balancing test applied when considering the proper procedures in a bond hearing for a criminal noncitizen who concedes he is subject to mandatory detention, the existing section 1226(a) bond-hearing procedures comport with due process. *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) ("The alien's burden of proof is only to show, by a preponderance of the evidence, that he or she is not a danger to the community or a flight risk. Those procedures, for individuals already in the country unlawfully, do not violate the Constitution's Due Process Clause."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022) ("[Section] 1226(a)'s procedures satisfy due process, both facially and as applied to [the petitioner]."); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 59 (1st Cir. 2021) (Lynch, J., dissenting) (the "majority's due process analysis"—and placing the burden of proof on the government in section 1226(a) bond hearings—"is contrary to Supreme Court precedent, contrary to precedent from other circuits, and wrong").

Regarding the first *Mathews* factor (the private interest at stake), while noncitizens in removal proceedings are entitled to due process, they are not necessarily entitled to the same procedures as U.S. citizens. *See Miranda*, 34 F.4th at 359–61; *Demore*, 538 U.S. at 521 ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."). Regarding the second *Mathews* factor (the risk of erroneous deprivation of the private interest), the district court ignored that a standard bond hearing and opportunity for administrative appeal already provides substantial process. *See Miranda*, 34 F.4th at 362. Finally, regarding the third *Mathews* factor (the government's interest in maintaining its current procedures), the district court disregarded the Supreme Court's admonition that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).

In short, there is no support in the Constitution, Supreme Court precedent, or this Court's precedent for the district court's requirement that the government bear the burden of proof, let alone by a heightened standard, to justify the continued detention of a noncitizen like Banyee who concedes that he is subject to mandatory detention under 8 U.S.C. § 1226(c).

# CONCLUSION

This Court should reverse the district court's judgment.

Dated: December 19, 2022

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

WILLIAM C. PEACHEY
*Director*

WILLIAM SILVIS
*Assistant Director*

JESSICA W. P. D'ARRIGO
*Senior Litigation Counsel*

*s/ Courtney E. Moran*
COURTNEY E. MORAN
SARAH TATE CHAMBERS
*Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 514-4587
courtney.e.moran@usdoj.gov*

Attorneys for Respondents-Appellants

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,311 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

*s/ Courtney E. Moran*
COURTNEY E. MORAN
*Trial Attorney*
*U.S. Department of Justice, Civil Division*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Courtney E. Moran*
COURTNEY E. MORAN
*Trial Attorney*
*U.S. Department of Justice, Civil Division*