No. 22-2252

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Nyynkpao BANYEE,

*Petitioner-Appellee*,

v.

Merrick B. GARLAND, United States Attorney General, et al.,

*Respondents-Appellants*.

On Appeal from a Final Judgment of the United States District Court for the District of Minnesota
Case No. 21-1817 (WMW/BRT)

**BRIEF OF *AMICI CURIAE* AMERICAN IMMIGRATION COUNCIL AND NATIONAL IMMIGRATION PROJECT IN SUPPORT OF PETITIONER-APPELLEE'S PETITION FOR REHEARING EN BANC**

Katherine Melloy Goettel
Associate Clinical Professor
University of Iowa College of Law
380 Boyd Law Building
Iowa City, Iowa 52242
Telephone: (319) 467-3252
Kate-goettel@uiowa.edu

Suchita D. Mathur
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 507-7537
smathur@immcouncil.org

*Counsel for Amici Curiae*

i

# CORPORATE DISCLOSURE STATEMENT UNDER FRAP 26.1

I, Katherine Melloy Goettel, attorney for *amici curiae* certify that the American Immigration Council and National Immigration Project are non-profit organizations that do not have any parent corporations or issue stock and, consequently, there exists no publicly held corporation which owns 10% or more of stock.

*/s/ Katherine Melloy Goettel*
Associate Clinical Professor
University of Iowa College of Law
380 Boyd Law Building
Iowa City, Iowa 52242
Telephone: 319-467-3252
Kate-goettel@uiowa.edu

*Counsel for Amici Curiae*

Dated: December 9, 2024

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT UNDER FRAP 26.1**...................ii

**TABLE OF AUTHORITIES**............................................................................... iv

**I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT** .....................1

**II.   INTEREST OF AMICI** ........................................................................................2

**III.   ARGUMENT**.......................................................................................................3

  A.   The panel overlooked Supreme Court precedent in refusing to consider the punitive conditions of detention. ...................................................................3

  B.   The panel erred in presuming that noncitizens subject to prolonged detention are likely to be removed. ...................................................................9

**IV.   CONCLUSION** ................................................................................................12

**CERTIFICATE OF COMPLIANCE** ...................................................................13

**CERTIFICATE OF SERVICE** ............................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018) ...................................... 7
*Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) ........................................ 2, 3, 4, 9
*Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) ................................................. 1, 4, 8
*Chavero-Linares v. Smith*, 782 F.3d 1038 (8th Cir. 2015) ...................................... 4
*Chol A. v. Barr*, 455 F. Supp. 3d 896 (D. Minn. 2020) ............................................. 5
*Demore v. Kim*, 538 U.S. 510 (2003) .................................................................. 3, 4
*Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011) ............................... 11
*German Santos v. Warden Pike Cty. Corr. Fac.*, 965 F.3d 203 (3d Cir. 2020) . 1, 4, 5
*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ................................................................ 3
*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ............................................. 6
*Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) ............................................. 8
*Hope v. Warden of York Cty. Prison*, 972 F.3d 310 (3d. Cir. 2020); ....................... 3
*Landon v. Plasencia*, 459 U.S. 21 (1982) ................................................................ 3
*Mathews v. Eldridge*, 424 U.S. 319 (1976) .......................................................... 1, 3
*Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018) ....................................... 11
*Pedro O. v. Garland*, 543 F. Supp. 3d 733 (D. Minn. 2021) .................................. 11
*Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021) .............................................................. 6
*Rodriguez v. Robbins*, 804 F.3d 1060, 1079 (9th Cir. 2015) .................................. 12
*Schall v. Martin*, 467 U.S. 253 (1984) ..................................................................... 4
*Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036 (C.D. Cal. 2019) ....... 8
*Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) ........................................... 1
*Zadvydas v. Davis*, 533 U.S. 678 (2001) .................................................................. 3

**Statutes**

8 U.S.C. § 1229a .......................................................................................................... 9
8 U.S.C. § 1252(b)(2) .................................................................................................. 9
8 U.S.C. § 1229a(b)(4)(A) ........................................................................................... 8

Appellate Case: 22-2252   Page: 4   Date Filed: 12/11/2024 Entry ID: 5465142

## Other Authorities

ACLU, American Oversight, and PHR Research Report, *Deadly Failures: Preventable Deaths in U.S. Immigration Detention*, June 21, 2024 ......................7

ACLU, *No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers*, 2022 ................................................................8

ACLU, *Prolonged Detention Fact Sheet* ................................................................11

Chanelle Diaz et al., *Harmful by Design-a Qualitative Study of the Health Impacts of Immigration Detention*, J. of General Internal Med., Nov. 30, 2022 ................7

December 19, 2022 Addendum ("A") ......................................................................5

Joint Appendix ("App.") ........................................................................................10

Mot. to Dismiss, Muse v. Barr, No. 20-2435 (8th Cir. Nov. 23, 2020) ....................11

Office of Inspector General, U.S. Dept. of Homeland Security, *Summary of Unannounced Inspections of ICE Facilities Conducted in Fiscal Years 2020-2023*, Sept. 24, 2024 ..............................................................................................6

Office of Professional Responsibility, ICE, *Office of Detention Oversight Follow-Up Compliance Inspection 2024-002-436, Kandiyohi County Jail, Wilmar, Minnesota,* Aug. 27-29, 2024 ....................................................................................7

Project on Government Oversight, *DHS's Secret Reports on ICE Detention*, Aug. 21, 2023 ..................................................................................................................6

Supplemental Appendix ("S.App.") ......................................................................10

U.S. Courts of Appeals—Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit [hereinafter "Median Time Intervals"], 2022 ..............10

## Rules

Fed. R. App. P. 29(a)(4)(E). .....................................................................................2

Fed. R. App. Proc. 29(b) ..........................................................................................1

Fed. R. App. Proc. 35 ...............................................................................................1

## Regulations

8 C.F.R. § 1240.15 ...................................................................................................9

## I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

The central question in this case is whether due process requires additional procedural protections where mandatory immigration detention becomes prolonged. That question, which implicates the constitutional rights of thousands of people, is exceptionally important, and *amici* therefore urge this Court to rehear this case. Fed. R. App. Proc. 29(b), 35.

The panel's failure to consider noncitizens' liberty interests in determining the "important constitutional limitations" on immigration detention conflicts with other circuit case law and Supreme Court precedent on procedural due process. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *see Black v. Decker*, 103 F.4th 133, 147–50 (2d Cir. 2024); *German Santos v. Warden Pike Cty. Corr. Fac.*, 965 F.3d 203, 213 (3d Cir. 2020); *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under a *Mathews* analysis, courts must weigh a noncitizen's interest in liberty against the government's interest in continued detention. Here, as *amici* discuss, the private interest of detained noncitizens is heightened by the punitive conditions of confinement in immigration custody; the risk of erroneous deprivation of liberty is similarly exacerbated by those conditions; and the governmental interest diminishes over time because the length of detention often correlates to a greater likelihood that a noncitizen will win relief and the right to remain in this country. Consequently, *amici* support Mr. Banyee's petition for

1

rehearing *en banc* and ask the Court to correct the panel's erroneous analysis by adopting a proper "interest balancing" test that considers a noncitizen's prolonged detention in carceral conditions of confinement and their likelihood of prevailing in their immigration case. *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024).

## II. INTEREST OF AMICI[1]

The American Immigration Council (Council) is a non-profit organization that strives to strengthen the United States by shaping immigration policies and practices through innovative programs, cutting-edge research, and strategic legal and advocacy efforts grounded in evidence, compassion, justice and fairness. The Council frequently appears as *amicus curiae* before the Board of Immigration Appeals (BIA), the U.S. Courts of Appeals, and the Supreme Court.

The National Immigration Project is a nonprofit membership organization of immigration attorneys, advocates, and impacted people. The organization litigates, advocates, educates, and provides technical assistance on issues related to immigration enforcement, detention, removal defense, the operation of the immigration courts, and due process in the immigration system. The

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person other than *amici curiae*, its members, and its counsel contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

organization has participated as *amicus curiae* in several significant immigration-related cases before the U.S. Supreme Court, the federal courts of appeal, and the BIA.

III. ARGUMENT

    A. **The panel overlooked Supreme Court precedent in refusing to consider the punitive conditions of detention.**

The Supreme Court has long applied the balancing test in *Mathews*, 424 U.S. at 335, as a framework for determining whether individuals—including noncitizens—in government custody have received constitutionally-adequate process. *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004) (applying *Mathews* to assess whether due process entitled enemy combatant to evidentiary hearing); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (observing that *Mathews* governs evaluation of noncitizen's claim that she was denied due process at exclusion hearing). Contrary to the panel's reasoning, neither *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), nor *Demore v. Kim*, 538 U.S. 510, 527-28 (2003) preclude that necessary balancing of interests in Mr. Banyee's case. *Cf. Banyee*, 115 F.4th at 933.

Instead, the *Zadvydas* court reiterated that noncitizens in removal proceedings are civil detainees, and thus their detention must be "nonpunitive in purpose and effect." 533 U.S. at 690. Immigration detention, like pretrial detention, violates due process when the conditions of confinement constitute punishment.

3

*See Hope v. Warden of York Cty. Prison*, 972 F.3d 310, 325-26 (3d. Cir. 2020); *see also Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015) (extending constitutional standard for pre-trial detainee to immigration detainee). Therefore, when conducting the individualized analysis required by *Mathews* and other Supreme Court caselaw, courts should consider the actual conditions in immigration custody. *See Schall v. Martin*, 467 U.S. 253, 269-74 (1984) (considering conditions in preventive detention in determining whether it was unconstitutionally punitive before applying *Mathews*). Other circuit courts have found those conditions to weigh in favor of the liberty interests of noncitizens subject to mandatory detention. *See Black*, 103 F.4th at 151 (prolonged detention "seriously affected" petitioners' private interests as they experienced health problems and facility-related restrictions that hindered legal preparations); *German Santos*, 965 F.3d at 211-13 (emphasizing relevance of whether conditions of confinement are "meaningfully different from criminal punishment"). As the Third Circuit has held, where "civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable." *German Santos*, 965 F.3d at 211 (cleaned up).

    Here, the panel erred in adopting a bright-line rule that prohibits consideration of the private interests at stake, including the impact of the conditions of detention. *Banyee*, 115 F.4th at 933. *Demore*, which considered a

4

facial challenge, does not foreclose such balancing when detention is unreasonably prolonged. *See* 538 U.S. at 532 (Kennedy, J., concurring). The realities of prolonged immigration detention demonstrate just how severely the conditions exacerbate noncitizens' liberty deprivation; correcting the panel's error is thus an issue of exceptional importance.

First, for noncitizens like Mr. Banyee, nothing distinguishes their "civil" detention in criminal jails from punitive penal incarceration. Immigration and Customs Enforcement (ICE) holds noncitizens in the Eighth Circuit in county jails.[2] In those jails, noncitizens are detained with people serving criminal sentences. Mr. Banyee was detained in Kandiyohi County Jail in Minnesota in conditions "indistinguishable from criminal incarceration." A22; *see also Chol A. v. Barr*, 455 F. Supp. 3d 896, 903 (D. Minn. 2020) (same, for Freeborn County Jail in Minnesota); *see also German Santos*, 965 F.3d at 213 ("Despite its civil label, his detention is indistinguishable from criminal punishment."). Detention in conditions that "resemble penal confinement," A22, profoundly restricts noncitizens' liberty.

Second, prolonged immigration detention causes significant harm to people's mental and physical health. As courts have recognized, there is abundant

---

[2] *See* ICE, Detention Facilities, https://www.ice.gov/detention-facilities (filter by "St. Paul Field Office"), listing the following facilities: Polk and Pottawattamie County Jails (Iowa); Freeborn, Kandiyohi and Sherburne County Jails (Minnesota); Phelps County Jail (Nebraska); Grand Forks County Correctional Center (North Dakota); and Pennington County Jail (South Dakota).

5

"evidence of subpar medical and psychiatric care in ICE detention facilities." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (discussing *amicus* briefs detailing abuse suffered "at the hands of guards and detainees, resulting in mental health problems"); *see also Reid v. Donelan*, 17 F.4th 1, 16 (1st Cir. 2021) (Lipez, J., dissenting) (citing evidence of physical harms caused by insufficient medical care and psychological harm in detention). The punitive conditions in ICE custody have been extensively studied and well-documented: just during the pendency of this case, several reports—including those issued by government agencies—have further established that shockingly negligent medical care, abusive treatment, and failure to prevent sexual assault is widespread in ICE detention.[3] Kandiyohi County Jail exemplifies this disturbing reality. In August 2024, ICE's Office of Detention Oversight conducted inspections of the facility and found multiple

---

[3] *See, e.g.,* Office of Inspector General, U.S. Dept. of Homeland Security, *Summary of Unannounced Inspections of ICE Facilities Conducted in Fiscal Years 2020-2023* (Sept. 24, 2024), https://www.oig.dhs.gov/sites/default/files/assets/2024-09/OIG-24-59-Sep24.pdf (detailing ICE's failure to comply with detention standards relating to medical care, medical staffing, safety, and solitary confinement); Project on Government Oversight, *DHS's Secret Reports on ICE Detention* (Aug. 21, 2023), https://www.pogo.org/investigations/dhss-secret-reports-on-ice-detention (describing records from DHS's Office for Civil Rights and Civil Liberties that show years of inadequate medical and mental health care, and thousands of complaints of sexual and physical abuse of people in ICE custody).

deficiencies in the areas of medical care, health and safety, sexual abuse and assault prevention, self-harm and suicide prevention, and solitary confinement.[4]

Nor are such findings merely a recent trend with negligible consequences. In a report analyzing the deaths of 52 people in ICE custody between 2017 and 2021, independent medical experts and organizations found that DHS has failed to improve conditions that cause people to die in immigration detention.[5] Public health research confirms that certain "structural features of immigration detention erode health while creating barriers to access needed medical care."[6] These very real harms, resulting from the "harsh conditions of confinement" in ICE detention, should weigh heavily in any due process analysis. *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 155 (D.D.C. 2018).

Lastly, detention conditions increase the risk of erroneous deprivations of liberty by interfering with noncitizens' ability to litigate their cases. Despite the high stakes of removal proceedings, detained noncitizens have no right to

---

[4] Office of Professional Responsibility, ICE, *Office of Detention Oversight Follow-Up Compliance Inspection 2024-002-436, Kandiyohi County Jail, Wilmar, Minnesota,* Aug. 27-29, 2024, https://www.ice.gov/doclib/foia/odo-compliance-inspections/kandiyohiCoJail_WilmarMN_Aug27-29_2024.pdf.

[5] ACLU, American Oversight, and PHR Research Report, *Deadly Failures: Preventable Deaths in U.S. Immigration Detention*, June 21, 2024, https://www.aclu.org/publications/deadly-failures-preventable-deaths-in-us-immigrant-detention.

[6] Chanelle Diaz et al., *Harmful by Design-a Qualitative Study of the Health Impacts of Immigration Detention*, J. of General Internal Med., Nov. 30, 2022, https://link.springer.com/article/10.1007/s11606-022-07914-6.

appointed counsel. *See* 8 U.S.C. § 1229a(b)(4)(A). Rather, they may be represented only if they can find and pay for an attorney (from behind bars) or access pro bono counsel. The representation rate for people in removal proceedings is currently only 32% *overall*.[7] For those who represent themselves while detained, barriers such as difficulty communicating with the outside world, frequent transfers between facilities, and lack of access to law libraries, make self-representation extremely challenging. *See Black*, 103 F.4th at 156; *Hernandez-Lara v. Lyons*, 10 F.4th 19, 30 (1st Cir. 2021) (noting that "detained individuals will likely experience difficulty in gathering evidence on their own behalf" and government's refusal to provide immigration records). And even for those who do secure representation, the conditions of their confinement make it difficult to access their attorney. *See, e.g.*, *Black*, 103 F.4th at 156 ("[D]etained noncitizens may have a much harder time preparing their cases because of difficulties communicating with counsel and gathering evidence."); *Torres v. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1045 (C.D. Cal. 2019) (detailing detention center that limits calls to less than 10 minutes, prevents free and confidential legal calls, and charges expensive rates).[8]

---

[7] Executive Office for Immigration Review, *Adjudication Statistics, Current Representation Rates*, Oct. 10, 2024, https://www.justice.gov/eoir/media/1344931/dl?inline.

[8] *See also* ACLU, *No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers*, June 9, 2022, https://www.aclu.org/report/no-fighting-chance-ices-denial-access-counsel-us-immigration-detention-centers (detailing barriers to access to counsel in ICE detention centers nationwide).

8

These conditions increase the likelihood that noncitizens' detention will be erroneously prolonged through no fault of their own.

### B. The panel erred in presuming that noncitizens subject to prolonged detention are likely to be removed.

Noncitizens with successful defenses to removal are often detained longer than those who lack claims for relief; the government's interest in detaining someone therefore frequently diminishes over time. For those who successfully challenge their removal, detention may last many months, if not years. This reality contradicts the panel's presumption that Mr. Banyee is likely to be removed. *See Banyee*, 115 F.4th at 933 (erroneously contrasting Mr. Banyee's case from those in which "deportation is only a remote possibility"). Despite the "back-and-forth rulings" on Mr. Banyee's removability, including several agency decisions in his favor, the panel failed to consider the likelihood of relief from removal in an individualized due process analysis. *Id.* at 933-34.

For a noncitizen with a colorable defense to removal, the administrative and judicial review process is lengthy. First, a noncitizen may contest their removal before an immigration judge in an adversarial proceeding. *See* 8 U.S.C. § 1229a. That decision can be appealed by either party to the Board of Immigration Appeals. 8 C.F.R. § 1240.15. If the BIA affirms the removal order, a noncitizen can petition for review to the Eighth Circuit. 8 U.S.C. § 1252(b)(2). An Eighth Circuit civil

9

appeal takes approximately 10 to 12 months.[9] Accordingly, for a detained noncitizen with a meritorious defense to removal, the administrative and appellate process can easily take well over a year, and longer if the case is remanded to the BIA and immigration judge for additional proceedings.

This is illustrated in Mr. Banyee's case. His immigration court proceedings lasted 75 days, at the conclusion of which the immigration judge granted him cancellation of removal. S.App.1-34. He remained detained as the government appealed the immigration judge's order. More than six months later, the BIA affirmed the immigration judge's grant of cancellation of removal but remanded the case to reexamine whether his conviction constitutes an aggravated felony. App.208-211. Two months later, the immigration judge ruled against Mr. Banyee and he appealed to the BIA. App.214-219. That appeal remains pending.

The ping-ponging of Mr. Banyee's case is not atypical. For noncitizens with colorable claims for relief from removal, their cases may make their way up and down the administrative and appellate system before a final determination on the

---

[9] *See* U.S. Courts of Appeals—Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit [hereinafter "Median Time Intervals"], 2022, https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2022.pdf (median time for Eighth Circuit civil appeals in 2022 was 10.6 months, measured from filing notice of appeal to final opinion or order); Median Time Intervals, 2021, https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2021.pdf (median time in 2021 was 12.5 months) (last visited Dec. 8, 2024).

merits. *See, e.g.*, *Diop v. ICE/Homeland Security*, 656 F.3d 221, 226 (3d Cir. 2011) (petitioner received withholding of removal after three remands to the immigration court and nearly three years of detention). ICE detained Petitioner Abdullahi Muse for over 14 months while an immigration judge first granted him relief, which DHS appealed to the BIA. *See Muse v. Sessions*, 409 F. Supp. 3d 707, 716-717 (D. Minn. 2018). After the BIA reversed, Mr. Muse appealed to the Eighth Circuit. Mot. to Dismiss, *Muse v. Barr*, No. 20-2435 (8th Cir. Nov. 23, 2020). The BIA ultimately found in his favor in 2020, terminating his removal proceedings. *Id*. In another case, ICE detained petitioner Pedro O. for 13 months, during which time an immigration judge granted relief from removal and the government appealed to the BIA. *Pedro O. v. Garland*, 543 F. Supp. 3d 733, 737 (D. Minn. 2021). The BIA agreed with the immigration judge, affirming relief from removal.

Similarly, a study of members of the *Jennings v. Rodriguez* prolonged mandatory detention subclass in the Ninth Circuit—individuals with pending cases detained for at least six months—showed that 38% had already won their immigration cases during the study period.[10] Despite over one-third of the subclass being unremovable, ICE detained members for an average of 427 days (over fourteen months), with the longest individual detention period exceeding four

---

[10] ACLU, *Prolonged Detention Fact Sheet*, https://www.aclu.org/sites/default/files/assets/prolonged_detention_fact_sheet.pdf (last visited Dec. 4, 2024).

years. *Rodriguez v. Robbins*, 804 F.3d 1060, 1079 (9th Cir. 2015), *rev'd sub. nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018).

\* \* \*

In sum, by entirely ignoring Mr. Banyee's liberty interests, including the punitive conditions of his confinement and his colorable claim to relief from removal, the panel's decision conflicts with well-established principles of procedural due process and the realities of immigration detention.

## IV. CONCLUSION

For the foregoing reasons, *amici* support Mr. Banyee's petition for rehearing.

Respectfully submitted,

Dated: December 9, 2024

*/s/ Katherine Melloy Goettel*
Katherine Melloy Goettel
University of Iowa College of Law
380 Boyd Law Building
Iowa City, Iowa 52242
kate-goettel@uiowa.edu
Telephone: (319) 467-3252

Suchita Mathur
American Immigration Council
1331 G Street, NW, Suite 200
Washington, DC 20005
smathur@immcouncil.org
Telephone: (202) 507-7537

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(b) because the brief contains 2,573 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.

Pursuant to 8th Cir. R. 28A(h), I certify that the brief has been scanned for viruses and is virus free.

Dated: December 9, 2024 */s/ Katherine Melloy Goettel*
Katherine Melloy Goettel

# CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

DATED: December 9, 2024        */s/ Katherine Melloy Goettel*
Katherine Melloy Goettel