UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No: 22-2252

Nyynkpao Banyee

Appellee

v.

Pamela Bondi, U.S. Attorney General, et al.

Appellants

Eric Holien, Sheriff, Kandiyohi County

------------------------------

Constitutional Accountability Center, et al.

Amici on Behalf of Appellee(s)

------

Appeal from U.S. District Court for the District of Minnesota
(0:21-cv-01817-WMW)

------

**ORDER**

The petition for rehearing en banc is denied. The petition for rehearing by the panel is also denied.

Chief Judge Colloton, Judge Smith, Judge Shepherd, Judge Kelly, and Judge Erickson would order rehearing en banc.

STRAS, Circuit Judge, concurring in the denial of rehearing en banc.

Admitted into the United States as a child refugee, Nyynkpao Banyee committed his first crime just months after he turned eighteen. It started with misdemeanors like pocketing cash from the register at work, making a false police report, and possessing marijuana and drug paraphernalia. Within two years, he moved on to sticking up high-school students, which resulted in a felony conviction of robbery with a dangerous weapon. After he became a felon who had committed multiple "crimes involving moral turpitude," the government detained him while it decided whether to remove him from the country. 8 U.S.C. § 1227(a)(2)(A)(ii)–(iii); *see id.* § 1226(a), (c)(1)(B). As the unanimous panel opinion said nearly six months ago, due process set no deadline for how long it could take. There is no reason to unsay it now just because the government has reached its decision.

I.

Start with the fact that Banyee still has something at stake in this case. He petitioned for a writ of habeas corpus on the ground that "[h]e [was] in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2241(c)(3). Entry of a final removal order has left him in much the same place. He remains in custody and still believes it is unconstitutional, even if the justification now is 8 U.S.C. § 1231(a)(2), rather than § 1226(c)(1).

The point is the case itself is not moot, even if the argument he made before the panel may well be. *See Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) (concluding that a switch from § 1226 detention to § 1231 mooted the petitioner's "*argument* under [§ 1226]" but not his underlying challenge to "continued detention," which the court assessed under § 1231 instead (emphasis added)). It remains possible, after all, for us to agree that his ongoing detention violates due process, direct the district court to grant the writ, and order a bond hearing or immediate release. *See Hassoun v. Searls*, 976 F.3d 121, 129 (2d Cir. 2020) (explaining that a habeas challenge to immigration detention "remain[s] live as long

as the petitioner [is] detained and the government refuse[s] to grant his release" and "does not become moot when[ever] an intervening change merely affects the parties' arguments on the merits"). Exactly what *his* petition for rehearing asks us to do. Not to mention that the relief he is seeking in a parallel case would immediately place him back into § 1226(c)(1) detention, which is presumably why *he* acknowledges that the government might "*continue*" to use the panel's decision "against him."¹ (Emphasis added.) With a live constitutional dispute and "effectual relief" still on the table, the *case* is not moot. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted).

Then there is the timing, which cuts strongly against treating even the specific issue on appeal as moot. "[T]he case presented a live controversy at the time [the panel] decided it." *United States v. Flute*, 951 F.3d 908, 909 (8th Cir. 2020) (per curiam order). Later events cannot "retroactively" strip us of jurisdiction we have already exercised, as many courts have recognized. *Dickens v. Ryan*, 744 F.3d 1147, 1148 (9th Cir. 2014) (en banc order) (citation omitted); *see United States v. Doe* (*In re Grand Jury Investigation*), 399 F.3d 527, 528 n.1 (2d Cir. 2005) (holding that "vacatur of a previously issued decision of a court of appeals is not constitutionally mandated" when circumstances change "*after we file our decision* but before the mandate has issued" (emphasis added)); *Humphreys v. DEA*, 105 F.3d 112, 115 (3d Cir. 1996) (explaining that *even the death of a party* did not moot an appeal "in the true, i.e., jurisdictional sense" when it happened *after* the panel filed its decision); *Bastien v. Off. of Senator Ben Nighthorse Campbell*, 409 F.3d 1234, 1235 (10th Cir. 2005) (per curiam order) (stating that it was "inconsequential" that "no mandate had yet issued"). Even if a *pre*-decision order of removal could have mooted the appeal,

---

¹The capable-of-repetition-yet-evading-review exception to mootness is not a perfect fit, but it provides some guidance here. A win for Banyee in his immigration proceedings would, as the government argues, put "the same controversy . . . involving the same complaining party" right back before us. *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (citation omitted). Things can change quickly in immigration proceedings, at least this close to the end, so time may well run out before it could be "fully litigated" again. *Id.* at 462 (citation omitted).

in other words, a *post*-decision one does not. *See Armster v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 806 F.2d 1347, 1355 (9th Cir. 1986) (recognizing that events after "a valid decision has already been rendered" do not implicate "the limitations of our power").

II.

Let's just suppose for a moment that the case is moot, what then? Vacatur under *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950), is still not the answer. As a discretionary "equitable remedy," it is "not . . . automatic." *Flute*, 951 F.3d at 909 (citation omitted). Nor is it justified by "the conditions and circumstances of th[is] particular case." *Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 942 (8th Cir. 2025) (quoting *Azar v. Garza*, 584 U.S. 726, 729 (2018) (per curiam)); *see U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994) (explaining that "the party seeking relief from the status quo" has the burden "to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur"); *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 19 (2023) (Jackson, J., concurring in the judgment) ("[T]he reason for a vacatur remedy must be more than mere disagreement with the decision that one seeks to have vacated." (citation omitted)).

Key here is that the case and the appeal were *both* live when the panel heard argument on February 15, 2024, and remained live when we filed our unanimous opinion on September 17. It then continued that way for a while, even as we granted Banyee an extension to prepare and file his petition for rehearing. His removal order did not become administratively final until December 11, when the Board dismissed his appeal in the underlying immigration proceedings.

No one can blame the parties for taking the extra time we gave them, but wiping the slate clean would create an obvious incentive for unhappy litigants to drag out the en banc review process even longer. If losing parties stall long enough, after all, an adverse decision might just go away on its own. *See Finberg v. Sullivan*, 658 F.2d 93, 97 n.6 (3d Cir. 1980) (en banc) (warning of "the undesirable

consequence . . . of encouraging the losing party on appeal to seek to delay the issuance of the mandate and in the interim bring about, for the sole purpose of evading the unfavorable decision, events which moot the case"). Immigration-related cases are particularly vulnerable to such manipulation, given that delays are already common and removal is always a possibility. *Cf.* 8 U.S.C. § 1231(a)(1)(A) (setting a general 90-day deadline for carrying out removal orders).

To be sure, winners can game the process too. *See Garza*, 584 U.S. at 729 (suggesting that a party could try to "obtain a favorable judgment, take voluntary action that moots the dispute, and then retain the benefit of the judgment" without the possibility of review (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 75 (1997))). Here, however, it strains credulity to believe that the Board intentionally timed its decision in Banyee's immigration proceedings with an eye toward "depriving us of continuing jurisdiction over th[is] case." *Hassoun*, 976 F.3d at 131 (citation omitted); *see id.* (explaining that, when it comes to "fault" in the mootness context, "conduct that is voluntary in the sense of being non-accidental, but which is entirely unrelated to the lawsuit," does not count (citation omitted)). Indeed, such a strategy is impossible to square with the fact that the government is the one now insisting that the "case is *not* moot." (Emphasis added.)

Nor do other equitable considerations favor vacatur. *See Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019) (noting that we focus on the "public interest," as well as "fault" (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000))). The panel opinion "benefits . . . litigants and the public [through] the resolution of legal questions." *U.S. Bancorp*, 513 U.S. at 27; *see id.* at 26 (explaining that "[j]udicial precedents . . . are not merely the property of private litigants" (citation omitted)). Although it splits with the approaches taken by other courts, disagreement about important constitutional issues is a feature, not a bug, of our judicial system. *See id.* at 27 ("[D]ebate *among* the courts of appeals . . . illuminates the questions that come before [the Supreme Court] for review."). As for the parties' private interests, if we assume that a potential return to § 1226(c)(1) detention is too remote to defeat mootness, it is certainly too remote to establish any substantial

prejudice from the decision's preclusive effect. *Cf. Munsingwear*, 340 U.S. at 39–40 (explaining that vacatur can prevent the "hardship" of estoppel in future litigation).

We would be far from the first to recognize that panel opinions mooted between filing and the issuance of the mandate are generally not good candidates for discretionary vacatur.[2] When others disagree, it is mostly in brief, nonprecedential orders.[3] The reasons, to the extent they provide any, largely just confirm that vacatur depends on the facts and equities of each case.[4] *See Humphreys*, 105 F.3d at 117 ("recogniz[ing] the obvious: discretionary power may be exercised in either direction"). As the panel—and now the court as a whole—has concluded, it is inappropriate here.

---

[2]*See, e.g.*, *Flute*, 951 F.3d at 909–10; *Bastien*, 409 F.3d at 1235–36; *Dickens*, 744 F.3d at 1148; *United States v. Payton*, 593 F.3d 881, 883–86 (9th Cir. 2010) (per curiam order); *In re Grand Jury Investigation*, 399 F.3d at 528 n.1; *Humphreys*, 105 F.3d at 116–17; *Mfrs. Hanover Tr. Co. v. Yanakas*, 11 F.3d 381, 382–85 (2d Cir. 1993); *Armster*, 806 F.2d at 1355–56.

[3]*See, e.g.*, *Kimbrough v. Bowman Transp., Inc.*, 929 F.2d 599, 599 (11th Cir. 1991) (per curiam); *Hendrickson v. Sec'y of Health & Hum. Servs.*, 774 F.2d 1355, 1355 (8th Cir. 1985) (order); *United States v. Miller*, 685 F.2d 123, 124 (5th Cir. 1982) (per curiam); *United States v. Caraway*, 483 F.2d 215, 216 (5th Cir. 1973) (en banc) (per curiam).

[4]*See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 327–28 (4th Cir. 2021) (acknowledging the "strong reasons to avoid vacatur," but concluding that they were outweighed by concerns about a split panel and a holding that federal firearm laws were facially unconstitutional); *Flute*, 951 F.3d at 911–12 (Colloton, J., dissenting) (calling for vacatur because the government "use[d] its formidable leverage to truncate the appellate process" after prevailing before the panel); *Clarke v. United States*, 915 F.2d 699, 706–08 (D.C. Cir. 1990) (en banc) (suggesting that vacatur is "particularly appropriate" when the panel decision went against the government on a constitutional issue). *But cf. United States v. Ghandtchi* (*In re Ghandtchi*), 705 F.2d 1315, 1316 (11th Cir. 1983) (per curiam) (seeing no meaningful difference between cases like this and those that "bec[o]me moot while [a] petition for certiorari [is] pending").

III.

There was no shortage of filings and views in this case, on both the merits and mootness, and we had an unusually long time to consider the petition for rehearing. The court made the right call by denying it.

COLLOTON, Chief Judge, with whom SMITH, Circuit Judge, joins, dissenting from denial of rehearing en banc.

The panel in this case declared that the Due Process Clause places no constraint on how long the government may detain an alien under 8 U.S.C. § 1226(c) without a bond hearing pending a decision on whether the alien is to be removed from the country: three years, five years, ten years—there is no limit. Then, when the government entered a final removal order in this case, and the alien was detained under different statutory authority based on different circumstances, the panel refused to acknowledge that the case concerning the lawfulness of detention under § 1226(c) is moot. The court should order rehearing en banc.

I.

This case is moot. Appellee Banyee's habeas petition in the district court concerned whether lengthy mandatory detention under 8 U.S.C. § 1226(c) without a bond hearing violated due process while he was awaiting a determination on whether he was to be removed from the country. The government made a final removal determination on December 11, 2024. Banyee is now detained under 8 U.S.C. § 1231(a), which governs the detention of aliens who are ordered removed.

The panel concluded that although the basis for the alien's detention has changed, the appeal is not moot because "[t]he underlying constitutional claim remains the same," and "this court could still release Petitioner-Appellee from detention if his due-process rights had been violated." *Banyee v. Bondi*, No. 22-2252 (8th Cir. filed Feb. 12, 2025). The government did not make these arguments.

The panel's conclusion is incorrect. Not all due process claims are the same. The government's reason for detaining a person is highly relevant to whether the detention is constitutional. Banyee's habeas petition alleged that he was in custody in violation of the Constitution only because he was detained too long under § 1226(c) without a bond hearing while awaiting a determination on removal. If this court were to conclude that the government could not detain Banyee for more than a year without a bond hearing while he was awaiting a removal determination as of 2022, that conclusion would not justify ordering the government to provide a bond hearing or to release Banyee now, after he has been ordered removed. Whether Banyee's detention under § 1226(c) violated his due process rights is no longer a live issue.

Banyee has not raised a constitutional claim about his detention under § 1231(a) after he was ordered removed. His habeas petition makes no claim that his current detention is unconstitutional. Banyee filed his petition for rehearing before the government ordered him removed, and the petition thus raised no claim about detention under § 1231(a). There is no pending claim that could be "the same" as the moot constitutional claim in the habeas petition.

The panel decision raises a question of exceptional importance because it conflicts with the decisions of multiple courts of appeals on this point. *See Rodney v. Mukasey*, 340 F. App'x 761 (3d Cir. 2009) ("Accordingly, insofar as Rodney challenged the lawfulness of his detention pursuant to 8 U.S.C. § 1226(c), and he is no longer in custody pursuant to this statute, his appeal is moot."); *Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) ("Wang is now subject to detention under § 241 and . . . his continued detention under § 241 does not violate the Due Process Clause. To the extent that Wang previously may have had a cognizable due process argument under § 236, that claim has been rendered moot. *See Al Najjar v. Ashcroft*, 273 F.3d 1330, 1338 (11th Cir. 2001) (holding a challenge to pre-final order detention moot once the final order has been entered); *United States ex rel. Spinella v. Savoretti*, 201 F.2d 364 (5th Cir. 1953) (same).").

The panel gave an alternative rationale that "Petitioner-Appellee's petition for review of his removal order, if successful, would place his detention right back into 8 U.S.C. § 1226(c), the provision this court previously considered."

This reasoning conflicts with the settled proposition that a case is moot if an actual controversy does not exist through "all stages" of the litigation. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). A dispute that is not live now, but might arise in a new life twelve months hence, is not an actual case or controversy under Article III.

The potential for a successful petition for review that would place Banyee's detention under § 1226(c) is also highly speculative. Banyee's likelihood of success is apparently so meager that the panel recently denied his unopposed motion for stay of removal. *Banyee v. Bondi*, No. 24-3590 (8th Cir. filed Jan. 23, 2024). And if Banyee were to prevail in this court on his single legal issue—whether he is eligible for cancellation of removal—the Board of Immigration Appeals has already ruled that he deserves cancellation of removal, A.R. 244, so there is no reasonable expectation that he would be detained further.

Where there is no stay of removal, the government has recognized in a comparable case that a final order of removal and detention under § 1231(a) renders moot a dispute over detention under § 1226:

> Because Ojo is no longer subject to section 1226(c) detention, his challenge to that provision is moot. . . . . The possibility that Ojo could be returned to section 1226(c) detention in the future does not affect the mootness of this case. While there is an exception to the mootness doctrine if the underlying dispute is capable of repetition yet evading review, that exception does not apply here. . . . Even if Ojo is later returned to section 1226(c) detention, "that does not affect the mootness of the present Petition. Rather, it would merely give rise to a new case or controversy necessitating a new habeas petition. Regardless of what happens in the future, the case or controversy giving rise to the Petition actually before the Court is over." *Ssendikwanawa v. Lowe*, No. 14

> Civ. 1241, 2015 WL 5037573, at *4 (M.D. Pa. Aug. 25, 2015); *see Van Wie v. Pataki*, 267 F.3d 109, 115 (2d Cir. 2001) ("[M]ere speculation . . . does not rise to the level of a reasonable expectation or demonstrated possibility or recurrence.").

Respondent-Appellee's Supplemental Brief at 5, *Ojo v. Warden Elizabeth Det. Ctr.*, No. 19-1179 (3d Cir. Jan. 7, 2020).

The government advanced the same position in this circuit:

> The BIA's August 15, 2019, decision dismissing Petitioner's appeal rendered Petitioner's removal order administratively final. With a final removal order, the government's authority to detain Petitioner shifted from § 1226(a) (discretionary pre-order detention) to 8 U.S.C. § 1231(a) (post-order, pre-removal detention). Thus, post-order, the government now detains Petitioner under a different statutory authority than that at issue in this case, with different protections built in and for the distinct purpose of removing him from the United States. Consequently, the lawfulness of Petitioner's pre-order detention under § 1226(a) is no longer at issue, and this case, therefore, no longer satisfies Article III's on-going case-or-controversy requirement because the alleged injury (unlawful § 1226(a) detention) can [no] longer be redressed by the Court.

Memorandum of Law in Support of Respondent's Motion to Dismiss the Petition as Moot and Vacate the Order and Judgment of July 30, 2019, at 4-5, *Ali v. Brott*, No. 18-cv-2617 (D. Minn. Aug. 27, 2019) (citations omitted).

The government noted in response to Banyee's motion for vacatur that it took a different stance in a case where the alien had filed a motion to reopen with the Board of Immigration Appeals. But there is no motion to reopen in this case, and even in that circumstances, the Second Circuit ruled that the case was moot. *Gutierrez v. Garland*, No. 20-2781 (2d Cir. filed Jan. 24, 2023).

When an appeal becomes moot like this one before the appellate process is completed, the established practice calls for vacatur of the panel's opinion and judgment, vacatur of the judgment below, and dismissal. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950) (explaining that where a civil case "has become moot while on its way here," the "established practice" is to "vacate the judgment below and remand with a direction to dismiss"); *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 22 (2023) (explaining that "[o]ur *Munsingwear* practice is well settled" and declining an "invitation to reconsider it"); *Kimbrough v. Bowman Transp., Inc.*, 929 F.2d 599 (11th Cir. 1991) (per curiam) (applying *Munsingwear* and vacating panel decision where case became moot while petition for rehearing was pending); *Hendrickson v. Sec'y of Health & Human Servs.*, 774 F.2d 1355 (8th Cir. 1985) (applying *Munsingwear*, vacating panel opinion, and remanding for vacatur); *In re Ghandtchi*, 705 F.2d 1315, 1316 (11th Cir. 1983) (per curiam) ("We see no reason why this court should not declare the case moot when the mandate has not yet issued, if the Supreme Court can do the same while the case is pending before it on petition for certiorari, that is, the Court has not yet taken jurisdiction."); *United States v. Caraway*, 483 F.2d 215, 216 (5th Cir. 1973) (en banc) (per curiam) (applying *Munsingwear*, vacating panel opinion, and remanding with directions to vacate judgment based on mootness).

"Vacatur is in order when mootness occurs through happenstance — circumstances not attributable to the parties—or . . . the unilateral action of the party who prevailed in the lower court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (internal quotation omitted). The government prevailed before the three-judge panel in this case (indeed, received a broader decision than it sought). The government then mooted the dispute by at last entering a final order of removal, and now the government seeks to retain the benefit of the favorable judgment entered by the panel. Whether the source of mootness is deemed to be unilateral action of the government or happenstance, vacatur is appropriate. If anything, the reasons for vacatur are even stronger where a panel of this court has created a conflict in the circuits, and mootness precludes further review by the court en banc or the Supreme Court. *See Camreta v. Green*, 563 U.S. 692, 713 (2011); *Microsoft Corp. v. Int'l*

*Trade Comm'n*, No. 2012-1445, 2014 WL 10209132, at *3 n.1 (Fed. Cir. Jan. 3, 2014); *Farmer v. McDaniel*, 692 F.3d 1052 (9th Cir. 2012) (ordering vacatur of panel decision because "Farmer did not have the opportunity to exhaust the entire appellate process, including the possible pursuance of a petition for writ of certiorari in the Supreme Court").

That a member of the panel now advances a new justification for denying Banyee's motion for vacatur reinforces the conclusion that rehearing is warranted. The three-judge panel denied the motion on the ground that Banyee's claim is not moot. The panel did not address whether vacatur is warranted based on acknowledged mootness.

The principal authorities cited in the new argument do not support denying vacatur or declining rehearing. The court in *United States v. Flute*, 951 F.3d 908 (8th Cir. 2020), ruled that vacatur was not warranted because *Munsingwear* addressed only a civil case, and there was no circuit precedent applying vacatur in the criminal context. *Id*. at 909. This is not a criminal case, and *Munsingwear* squarely applies. With a petition for rehearing pending based on a conflict in the circuits, this is not a case where all that remains is "the ministerial act of issuing the mandate." *Bastien v. Office of Senator Ben Nighthorse Campbell*, 409 F.3d 1234, 1235 (10th Cir. 2005) (quoting *Humphreys v. Drug Enf't Admin.*, 105 F.3d 112, 115 (3d Cir. 1996)). The court in *Dickens v. Ryan*, 744 F.3d 1147 (9th Cir. 2014), declined to apply vacatur after an en banc court filed a decision, but distinguished cases in which vacatur was ordered where mootness occurred while a petition for rehearing was pending. *Id*. at 1148 n.2. Other decisions—unlike this case—involved mootness that was attributable to the party seeking vacatur. *United States v. Payton*, 593 F.3d 881, 885 (9th Cir. 2010); *In re Grand Jury Investigation*, 395 F.3d 527, 528 n.1 (2d Cir. 2005); *Mfrs. Hanover Trust v. Yanakas*, 11 F.3d 381, 382-83 (2d Cir. 1993). The decision in one case, *Humphreys*, to forego vacatur despite the availability of discretionary review is in tension with the Supreme Court's practice of ordering vacatur on petitions for writ of certiorari. *E.g.*, *Turtle Mountain*

*Band of Chippewa Indians v. N.D. Leg. Assembly*, 144 S. Ct. 2709 (2024); *Kendall v. Doster*, 144 S. Ct. 481 (2023); *Payne v. Biden*, 144 S. Ct. 480 (2023).

For these reasons, the court should order rehearing en banc, vacate the panel's opinion and judgment, and remand to the district court with directions to vacate its order and judgment and to dismiss the case as moot.

II.

On the merits, the government may well be correct that a one-year mandatory detention of appellee Banyee under 8 U.S.C. § 1226(c) was consistent with due process under the circumstances of this case. But the panel opinion attributes to the Supreme Court a much broader decision that it has not rendered—namely, that the Due Process Clause imposes no limit on the length of detention without a bond hearing for an alien detained under § 1226(c). *Banyee v. Garland*, 115 F.4th 928, 930 (8th Cir. 2024). If this court is to issue such a decision—in conflict with other courts of appeals that have considered the matter—then the court should do the analytical work necessary to justify the conclusion, if it can be justified at all. The panel's claim that the Supreme Court has "already done whatever balancing is necessary," *id*. at 933, is incorrect and insufficient. As the government acknowledged in this case, "[t]he Supreme Court has not yet decided whether due process might prohibit the continued application of section 1226(c) in individual extraordinary circumstances." Appellants' Br. 20.

The Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003), held that Congress may require that aliens "be detained *for the brief period* necessary for their removal proceedings." *Id*. at 513 (emphasis added). *Demore* rejected what the government acknowledges was a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). It should be elementary that a decision rejecting a facial challenge means only that the statute is constitutional in at least some of its applications. *United States v. Rahimi*, 602 U.S. 680, 693 (2024). The Court in *Demore* did not

hold or establish that every detention of any length under § 1226(c) was constitutional.

If the Supreme Court had already decided that mandatory detention under § 1226(c) was always constitutional regardless of duration or circumstances, then there would have been no reason for the Court in *Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018), to remand for the court of appeals to consider the constitutionality of the alien's detention. As the Second Circuit recognized, "*Demore* and *Jennings* leave open the question whether prolonged detention under section 1226(c) without a bond hearing will *at some point* violate an individual detainee's due process rights." *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024), *pet. for reh'g filed* (Nov. 20, 2024).

The panel opinion's criticism of the district court in *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018), for using "a multi-part, judge-made 'reasonableness' balancing test" is likewise unfair. The Due Process Clause has long required a judge to consider the surrounding circumstances to ascertain what process is due in a particular situation. "This phrase, 'due process of law,' has always been one requiring construction; and, as this court observed long ago, never has been defined, and probably never can be defined, so as to draw a clear and distinct line, applicable to all cases, between proceedings which are by due process of law and those which are not." *Freeland v. Williams*, 131 U.S. 405, 418 (1889); *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Hamdi v. Rumsfeld*, 542 U.S. 507, 528-29 (2004) (plurality opinion). The district court in *Muse* did not err by failing to perceive a bright-line Supreme Court decision on due process and § 1226(c) because the Court has not delivered it.

Perhaps there is an argument that the Constitution allows Congress to require unlimited detention of aliens under § 1226(c) without opportunity for a bond hearing, but even the government did not assert that position here. The government specifically declined to urge the rule adopted by the panel: "[A]lthough there may be cases in which continued detention without a bond hearing under section 1226(c)

may be unconstitutional, Banyee has not pointed to any extraordinary circumstances that would warrant such a conclusion here." Reply Br. 6. Instead, the government reiterated the Solicitor General's acknowledgment in *Demore* that "exceptional circumstances that present special due process concerns can be addressed on a case-by-case basis." *Id*. at 6 n.4 (quoting Petr's Br. 48-49, *Demore*, 538 U.S. 510). Other circuits have eschewed the panel's expansive claim. *Black v. Decker*, 103 F.4th 133, 143-48 (2d Cir. 2024); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 208-10, 212 (3d Cir. 2020).

The government argues that as-applied challenges to detention under § 1226(c) are available, but that the year-long mandatory detention of the alien involved here was consistent with the Due Process Clause under the circumstances. If the court insists on reaching the merits despite mootness, then the better course at this juncture would be to vacate the outlier opinion filed by the panel and take up on rehearing the government's argument for reversal of the district court. Whether or not the result in this case would be different, the panel's fallacious claim that the Supreme Court has "already done whatever balancing is necessary," and thus approved unlimited mandatory detention under § 1226(c), should not be retained as the law of the circuit.

_____

March 18, 2025

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.
_____
      /s/ Susan E. Bindler